**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

|  |  |  |
|---|---|---|
| **ROGERS GROUP, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 3:25-cv-1210** |
| | ) | **District Judge Campbell** |
| **MICHAEL REED, REED ALABAMA,** | ) | |
| **INC., and REED MAINTENANCE** | ) | |
| **SERVICES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### ANSWER TO VERIFIED COMPLAINT

Defendants Michael Reed ("Reed"), Reed Alabama, Inc. ("Reed Alabama"), and Reed

Maintenance Services, Inc. ("Reed Maintenance") (collectively, "Defendants"), by and through

undesigned counsel, hereby respond to the Verified Complaint filed by Plaintiff, Rogers Group,

Inc. ("Response"). In response to the numbered allegations in the Complaint, Defendants allege

and state the following:

### PARTIES[1]

1.      Plaintiff Rogers Group, Inc. ("Rogers Group") is an Indiana corporation with its

principal place of business in Nashville, Tennessee.

**RESPONSE: Defendants admit that Rogers Group is an Indiana corporation. It is
admitted upon information and belief that Rogers Group's principal place of business is in
Nashville, Tennessee.**

2.      Defendant Michael Reed ("Reed") is an individual resident of Marshall County,

Alabama and a citizen of Alabama.

**RESPONSE: The allegations of Paragraph 2 of the Complaint are admitted.**

---

[1] Headings included in this Answer mirror those as set forth in Rogers Group's Verified Complaint.
To the extent any contain factual allegations, such allegations are denied.

3.      Defendant Reed Alabama, Inc. ("Reed Alabama") is a corporation organized under the laws of the state of Alabama with its principal place of business in Union Grove, Alabama. Reed Contracting Services, Inc. changed its legal name to "Reed Alabama, Inc." on July 22, 2021. Michael Reed is the founder, registered agent, and president of Reed Alabama. For all time periods relevant to Rogers Group's claims, Reed has been and continues to be the president and either the sole shareholder or the majority and controlling shareholder of Reed Alabama.

**RESPONSE: The allegations of Paragraph 3 of the Complaint are admitted.**

4.      Defendant Reed Maintenance Services, Inc. ("Reed Maintenance") is a corporation organized under the laws of the state of Alabama with its principal place of business in Union Grove, Alabama. Reed Maintenance was incorporated by Reed Contracting Services, Inc. Michael Reed is the registered agent and president of Reed Maintenance. For all time periods relevant to Rogers Group's claims, Reed has been and continues to be the president and either the sole shareholder or the majority and controlling shareholder of Reed Maintenance.

**RESPONSE: The allegations of Paragraph 4 of the Complaint are admitted.**

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (2025) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because this action is between citizens of different states. Complete diversity exists because Rogers Group is a citizen of Tennessee and Reed, Reed Alabama, and Reed Maintenance are all citizens of Alabama.

**RESPONSE: Defendants admit that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 but deny that any facts exist sufficient to support any such claims for relief against Defendants and for this Court to exercise its jurisdiction over the alleged claims.**

6.      Venue is proper pursuant to 28 U.S.C. § 1391 (2025) because a substantial part of

the events or omissions giving rise to Rogers Group's claims occurred in this judicial district and because Reed, Reed Alabama, and Reed Maintenance are subject to the Court's personal jurisdiction with respect to Rogers Group's claims.

**RESPONSE: Defendants admit that venue is proper in this Court pursuant to 28 U.S.C. § 1391 but deny that any facts exist sufficient to support any such claims for relief against Defendants and for this Court to exercise its jurisdiction over the alleged claims. Any remaining allegations in addition to or inconsistent with the foregoing are denied.**

7. Additionally, through the APA (defined and described in more detail below), the parties stipulated that "[a]ny proceeding or action arising out of or related to the [APA or its contemplated transactions] shall be brought in the United States District Court for the Middle District of Tennessee." Each of the parties "irrevocably submits to the exclusive jurisdiction of" this Court.

**RESPONSE: Defendants admit that Rogers Group entered into an Asset Purchase Agreement with Reed, Reed Contracting Services, Inc., Reed Maintenance, Reed Leasing, LLC, Reed Management, Reeds', LLC, and Connie Reed on February 12, 2021 (the "APA"). Defendants further admit that the quoted language is contained within the APA, and speaks for itself, but deny that any facts exist sufficient to support any such claims for relief against Defendants and for this Court to exercise its jurisdiction over the alleged claims. Any remaining allegations in addition to or inconsistent with the foregoing are denied.**

## STATEMENT OF FACTS

8. Rogers Group is a family-owned company operating in twelve states providing construction, aggregates, paving, and related products and services to governments, industries, and individuals. Rogers Group's business includes, but is not limited to, road construction and paving, mass excavation and grading, installation of underground utilities, and production and sales of paving materials such as aggregates, asphalt, and concrete.

**RESPONSE: Defendants admit that Rogers Group engages in heavy construction services and provides crushed stone and asphalt to various industries in several states. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 8, and therefore deny the same.**

9.     For example, Rogers Group's construction aggregates division provides crushed stone for homes, schools, hospitals, road construction, and other projects. In addition to crushed stone, Rogers Group's aggregate products also include sand and rip rap. The company's asphalt and concrete paving divisions construct roads ranging from interstate highways to subdivision streets, airport runways, parking lots, and driveways, while its mass excavating and grading division functions as a full-service, turnkey site preparation contractor.

**RESPONSE: Defendants admit that Rogers Group provides crush rock and asphalt and grading services for several industries. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 9, and therefore deny the same.**

10.     Although Rogers Group has quarries and operations in a dozen states, the company provides significant products and services to governments, contractors, developers, and other customers in Alabama and Tennessee.

**RESPONSE: Defendants admit that Rogers Group has operated quarries and conducts business in several states, including Alabama and Tennessee. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 10, and therefore deny the same.**

11.     Reed Alabama—before its assets were sold to Rogers Group—offered products and services in the same construction space as Rogers Group. Reed Alabama once employed over 700 people, owned many pieces of heavy construction equipment and a large fleet of trucks, and operated seven ready mix concrete plants, four asphalt plants, and two aggregate facilities. Reed Alabama promoted itself as a specialist in paving, concrete, highway construction, civil construction site preparation, grading, utilities construction, trucking, quarry operations, and sales of sand, gravel, and other aggregates. The entirety of this business would later be sold to Rogers Group in an asset sale transaction.

**RESPONSE: Defendants admit that Reed Contracting was a civil construction company in North Alabama that provided mass excavating, grading, underground utilities,**

asphalt paving, and trucking services in and around the Huntsville area. **Defendants further admit that in February 2021, Reed Contracting operated five asphalt plants and a rock quarry that engaged in heavy road building and civil construction, and had six paving crews, dirt crews, and pipe crews (with a total of approximately 650 employees). Under the APA, Rogers Group purchased the "Business" of Reed Contracting, as well as substantially all of the assets owned by Reed Contracting and related Reed entities used in the operation of the "Business." The "Business" of Reed Contracting was defined in the APA as "the business of (a) mining and quarrying stone, rock, gravel and aggregates (including sand), and other miscellaneous materials, (b) providing heavy construction services (including grading, site preparation, road construction and underground utility construction and installation), and (c) producing, selling and installing asphalt and paving products, and providing related services." Any allegations inconsistent with or in addition to the foregoing are denied.**

12. Although Reed Alabama was (and is once more) actively engaged in business similar to that of Rogers Group, Reed Alabama is not Michael Reed's only active business in or adjacent to the construction industry that overlaps with the business of Rogers Group or Reed Alabama's operations that were sold to Rogers Group.

**RESPONSE: The allegations of Paragraph 12 of the Complaint are denied.**

13. Reed is the president and registered agent for Reed Maintenance. Reed is the incorporator, registered agent, president, and corporate secretary of Reed Management and Equipment, Inc. Reed is the registered agent and a member of Reed Leasing, LLC, which is in the business of equipment, machinery, and vehicle leasing. And Reed is the registered agent of Reeds', LLC. All of these entities are either Alabama corporations or limited liability companies.

**RESPONSE: Defendants deny that Reed Leasing has leased equipment, machinery, and vehicles to entities other than Reed Contracting and Reed Maintenance. Defendants deny that Reed is a member of Reed Leasing, LLC. The remaining allegations of Paragraph 13 of the Complaint are admitted.**

14. Reed Maintenance Services, Inc. describes itself as a "one-stop source for commercial and residential waste service needs," but its construction industry business is far more expansive than this description divulges.

**RESPONSE: Defendants admit that Reed Maintenance's website states that it is "your one-stop source for commercial and residential waste service needs." The remaining**

**allegations of Paragraph 14 of the Complaint are denied.**

15.     Reed Maintenance often uses a logo similar to Reed Alabama's logo:



but incorporating its separate website:



**RESPONSE: Defendants admit that the images in Paragraph 15 of the Complaint are true and accurate versions of the current logos for Reed Maintenance and Reed Alabama. Defendants admit that the logos for Reed Maintenance and Reed Alabama both display "REED" in capital letters, and that Reed Maintenance's logo includes its website. Any allegations inconsistent with or in addition to the foregoing are denied.**

16.     Some Reed Maintenance vehicles and equipment also display a stylized "RMS"

logo, as shown on the trucks below, which are featured on the Reed Maintenance website:





**RESPONSE: Defendants admit that certain vehicles owned by Reed Maintenance include the logo as displayed in the included picture in Paragraph 16 of the Complaint. Any allegations inconsistent with or in addition to the foregoing are denied.**

17.     Reed Maintenance provides customers with commercial and residential dumpsters, portable toilets, handwash stations, septic holding tanks, and fresh water tanks.

**RESPONSE: The allegations of Paragraph 17 of the Complaint are admitted.**

18.     Reed Maintenance also provides services that are even more directly engaged in the construction industry, such as construction material, heavy equipment, and specialty hauling, site work, and demolition.  According to its own website, a portion of which is shown below, Reed Maintenance's material hauling service transports "aggregate, sand, or asphalt":



**RESPONSE: Defendants admit that a previous version of Reed Maintenance's website displayed the image included in Paragraph 18 of the Complaint. Defendants admit that at one point Reed Maintenance's website included a general reference to "site work" as being among the services that Reed Maintenance could provide. However, Defendants aver this listing was in error, as Reed Maintenance's new Human Resources Director uploaded the website without general direction or approval of the work that the company could perform. After Reed learned of the website's description of the work that Reed Maintenance performed, he immediately instructed that this portion be removed. Defendants admit that Reed Maintenance previously engaged in material hauling, heavy hauling, and demolition work.**

**Defendants aver that pursuant to the parties' Joint Statement and Proposed Agreed Order [Doc. 27] entered in this matter, they have agreed (pending further order of this Court or by agreement of the parties) to refrain from engaging in the business or from facilitating others engaging in the business of (a) mining and quarrying stone, rock, gravel and aggregates (including sand), and other miscellaneous materials, (b) providing heavy construction services (including grading, site preparation, road construction, and underground utility construction and installation), (c) producing, selling and installing asphalt and paving products, and providing related services, and (d) all lease-hauling of limestone products and engaging in the provision of any other services beyond (i) waste services (which includes industrial waste management, dumpsters, portable toilets, the delivery of limited amounts of crushed rock to construction sites to assist in the provision of waste management services, and the hauling of sludge and other waste management services provided to papermills and tissue plants, including dropping gravel on the parking lot); and (ii) the selling and the hauling of sandstone and sand products for non-contractors, such as landscape businesses and brick masons.**

**Any allegations inconsistent with or in addition to the foregoing are denied.**

19.     Consistent with its advertising for services related to road construction projects,

Reed Maintenance recently registered to become a "prequalified prime contractor" with the

Alabama Department of Transportation.

**RESPONSE: Defendants admit that Reed Maintenance registered to become a "prequalified prime contractor" with the Alabama Department of Transportation ("DOT"). However, Defendants aver that Reed Maintenance obtained this qualification in order to bid on demolition work for the Alabama DOT. Any allegations inconsistent with or in addition to the foregoing are denied.**

20.     Perhaps because of the overlap between Reed Maintenance's heavy construction business and the heavy construction business of Reed Alabama, Reed Maintenance's website also features the work of Reed Alabama:



**RESPONSE: Defendants admit that Reed Maintenance's website at one point displayed the picture of a truck owned by Reed Alabama included in Paragraph 20 of the Complaint. Any allegations inconsistent with or in addition to the foregoing are denied.**

21.     Reed Maintenance and Reed Alabama share the use of approximately twenty dump trucks in addition to other pieces of heavy construction machinery. Reed Maintenance and Reed Alabama also provide products and services to construction customers in ways that are often overlapping and even interchangeable. Reed effectively operates Reed Maintenance and Reed Alabama as a single enterprise.

**RESPONSE:  The allegations of Paragraph 21 of the Complaint are denied.**

*Reed Alabama's Sale to Rogers Group and Reed's Associated Restrictive Covenants*

22.     In February of 2021, Rogers Group bought from Michael Reed all of the assets and business goodwill of Reed Contracting Services, Inc., as Reed Alabama was known prior to its name change later in 2021.

**RESPONSE: Defendants admit that Rogers Group purchased the assets and goodwill of Reed Contracting pursuant to the APA. Defendants aver that after executing the APA, Reed Contracting was required to change its name (which it chose to do to Reed Alabama), as Rogers Group had purchased the company name pursuant to Section 1.1(xvii). Defendants aver that Reed Alabama is a holding company that manages certain assets received as a result of the APA and has provided some financing for Reed Maintenance. Any allegations inconsistent with or in addition to the foregoing are denied.**

23.     At the time of the asset purchase, Reed was the sole shareholder of Reed Alabama.

**RESPONSE:  The allegations of Paragraph 23 of the Complaint are denied.**

24.     To document the acquisition, Rogers Group, Reed Alabama, Reed Maintenance, and Michael  Reed, with other entities and another individual, entered into an Asset Purchase Agreement (the "APA"), and Rogers Group and Reed entered into a Seller's Noncompetition Agreement (the "Noncompetition Agreement") and a Goodwill Purchase Agreement.

**RESPONSE: The allegations of Paragraph 24 of the Complaint are admitted.**

25.     Through the APA, Defendants confirmed that certain Reed-owned and -controlled entities other than Reed Alabama use their assets to "facilitate" Reed Alabama's business.

**RESPONSE: Defendants admit that the APA contained in its recitals, language that Reed Maintenance, Reed Leasing, Reed Management and Equipment, Inc. "use certain of their respective assets to facilitate [Reed Contracting's] operation of the Business," as defined in the APA. Any allegations inconsistent with or in addition to the foregoing are denied.**

26.     At the closing of the asset purchase transaction and pursuant to the APA, Rogers Group paid Reed, his wife, and his companies more than $133 million subject to certain increase and decrease adjustments for closing-related contingencies and related transactions.

10

**RESPONSE: The allegations of Paragraph 26 of the Complaint are admitted.**

27.     The APA prohibits Reed Alabama, Reed Maintenance, other Reed-related entities, and their respective agents from directly or indirectly competing or planning to compete with Rogers Group in the business operations sold to Rogers Group for a period of five years. This prohibition includes any participation in the "ownership, management, financing, or control of" a competitor in addition to serving as an "employee, advisor, consultant," or similar roles of or to a competitor anywhere in Alabama or Tennessee.

**RESPONSE: Defendants admit that in Section 5.5 of the APA, Reed Contracting, Reed Maintenance, and the other related entities agreed, for a period of five years within Alabama and Tennessee, not to directly or indirectly: "(i) compete or plan to compete with [Rogers Group] in the Business; (ii) participate in the ownership, management, financing or control of, or act as an employee, advisor, consultant or agent to, or furnish services, information or advice to, whether or not for consideration, a Person that competes or plans to compete with [Rogers Group] in the business; or (iii) take or encourage an action the purpose or effect of which is to evade the intent" of the non-compete provision. Any allegations inconsistent with or in addition to the foregoing are denied.**

28.     The APA further prohibits Reed Alabama, Reed Maintenance, other Reed-related entities, and their respective agents from directly or indirectly soliciting or hiring any Rogers Group employee for a period of five years. The APA's non-solicitation provision further prohibits the same individuals and entities from encouraging, inducing, or seeking to encourage or induce a customer, supplier, employee, or any other person having a business relationship with Rogers Group in Alabama or Tennessee to cease or adversely change that business relationship.

**RESPONSE: Defendants admit that Reed Alabama, Reed Maintenance, and the other related entities agreed not to solicit or hire any employee of Rogers Group, encourage or induce "an employee, agent, independent contractor, customer, supplier, or creditor" who had a business relationship with Rogers Group to "cease or adversely change its business relationship or dealings," or "deliberately interfere" with the relationship between Rogers Group and "an employee, agent, independent contractor, customer, supplier or creditor." Defendants admit that the geographic scope of these provisions was defined to include Alabama and Tennessee. Any allegations inconsistent with or in addition to the foregoing are denied.**

29.     Consistent with its non-competition and non-solicitation provisions, the APA prohibits Reed Alabama, Reed Maintenance, other Reed-related entities, and their respective agents from directly or indirectly making false, disparaging, or negative statements about Rogers Group, its business (including the business operations purchased from Reed Alabama), and its officers, employees, and other affiliates.

**RESPONSE: Defendants admit that Section 5.5 the APA contained a non-disparagement provision and that the language of the APA speaks for itself. Any allegations inconsistent with or in addition to the foregoing are denied.**

30.     The APA's non-disclosure provision prohibits the same individual and entities from directly or indirectly using or disclosing "any proprietary, secret or confidential information" related to Rogers Group, any of Rogers Group's agents or affiliates, or the business operations Rogers Group purchased from Reed Alabama.

**RESPONSE: The allegations of Paragraph 30 of the Complaint are admitted.**

31.     For each of the restrictive covenants set out in the APA, the APA provides for the restrictive period to be extended for any amount of time any party to the APA is in breach of a restrictive covenant.

**RESPONSE: Defendants admit that Section 5.5(e) of the APA contains acknowledgements that "[i]n the event of any breach or violation" then "the time period of such covenant will be tolled until such breach or violation is resolved," and that the language of the APA speaks for itself. Any allegations inconsistent with or in addition to the foregoing are denied.**

32.     In both the APA and the Noncompetition Agreement, Reed represented to Rogers Group that he owned "all of the Goodwill" associated with Reed Alabama. Rogers Group and Reed also expressly agreed to the application of Tennessee law in the Noncompetition Agreement.

**RESPONSE: The allegations of Paragraph 32 of the Complaint are admitted.**

33.     The Noncompetition Agreement prohibits Reed from disclosing any "confidential

and proprietary information of [Reed Alabama]" or related to Reed Alabama's business that was purchased by Rogers Group. Through the Noncompetition Agreement, Reed agreed that he "will not, and will not permit any [other] Person . . . at any time, disclose to any unauthorized Persons or use for [Reed's] own account or for the benefit of any third Person, any Confidential Information."

**RESPONSE: Defendants admit that Reed entered into the Noncompetition Agreement with Rogers Group on March 8, 2021 [Doc. 10-1], that the Noncompetition Agreement contains a Nondisclosure and Nonuse of Confidential Information provision in Section 3, and that the language of this provision speaks for itself. Any allegations inconsistent with or in addition to the foregoing are denied.**

34.     In conjunction with Reed's sale of Reed Alabama's assets, he also agreed not to compete with Rogers Group for five years.  The Noncompetition Agreement provides that, for a period of five years beginning on March 8, 2021:

> [Reed] shall not, directly or indirectly, in any capacity whatsoever (whether as owner, shareholder, member, partner, officer, director, lender, financier, manager, employee, consultant or otherwise), for [Reed's] own benefit or purposes or the benefit or purposes of any other person:
>
> (1)     compete or plan to compete with [Rogers Group] in [Reed Alabama's former] Business,
>
> (2)     participate in the ownership, management, financing or control of, or act as an employee, advisor, consultant or agent to, or furnish services, information or advice to, whether or not for consideration, a Person that competes or plans to compete with [Rogers Group] in [Reed Alabama's former] Business, or
>
> (3)     take or encourage an action the purpose or effect of which is to evade the intent of the [Noncompetition Agreement]. . . .

**RESPONSE: Defendants admit that Reed entered into the Noncompetition Agreement with Rogers Group on March 8, 2021 [Doc. 10-1], that the Noncompetition Agreement includes the quoted language, and that Section 4 of the Noncompetition Agreement speaks for itself. Any allegations inconsistent with or in addition to the foregoing are denied.**

35.     The Noncompetition Agreement also prohibits Reed from encouraging, inducing, or seeking to encourage or induce a customer, supplier, employee, or any other person having a

business relationship with Rogers Group in Alabama or Tennessee to cease or adversely change that business relationship.

**RESPONSE: Defendants admit that Reed entered into the Noncompetition Agreement with Rogers Group on March 8, 2021 [Doc. 10-1], which included several "prohibited activities, and that the language of Section 4(a)(ii) of the Noncompetition Agreement speaks for itself. Any allegations inconsistent with or in addition to the foregoing are denied.**

36.     The restrictions on Reed's ability to compete with Rogers Group after the sale of Reed Alabama's assets is limited geographically to Alabama and Tennessee, the states in which Reed and Reed Alabama did significant business prior to the asset sale to Rogers Group.  For all times relevant to this action, both before and since the asset sale, Rogers Group has also done significant business in both Alabama and Tennessee.

**RESPONSE: Defendants admit that the geographic scope of the restrictive covenants in the APA is limited to Alabama and Tennessee, and that Reed and Reed Contracting formerly engaged in business in both states prior to the asset sale to Rogers Group. Defendants specifically deny that Reed and Reed Alabama performed "significant business" in Tennessee prior to the execution of the APA. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 36, and therefore deny them.**

37.     Reed acknowledged in the Noncompetition Agreement that all of the restrictions on his ability to compete with Rogers Group were a material part of Rogers Group's decision to acquire his company's assets.

**RESPONSE: Defendants admit that in Section 2(a)(iv) of the Noncompetition Agreement, Reed acknowledged  that "the covenants contained herein are an integral, and not severable, material component of the basis of the consideration being paid by [Rogers Group] (and its affiliated entities) which consideration would not have been agreed to by [Rogers Group] but for the existence and enforceability of this Agreement. Any allegations inconsistent with or in addition to the foregoing are denied.**

38.     Reed also acknowledged that all of the restrictions on his ability to compete with Rogers Group are reasonably limited in time and scope and "do not impose a greater restraint than is necessary to protect" the business goodwill and operations that he sold to Rogers Group.

**RESPONSE: Defendants admit that in Section 4(b) of the Noncompetition Agreement, Reed acknowledged that "this Agreement constitutes a partial restraint on [Reed's] business and activities and contains reasonable limitations as to time, geographic area and scope of activity that do not impose a greater restraint than is necessary to protect the Goodwill and business interests of the Business and [Rogers Group]." Any allegations inconsistent with or in addition to the foregoing are denied.**

39. The Noncompetition Agreement also prohibits Reed from disparaging Rogers Group. The Noncompetition Agreement provides, "[Reed] agrees that he will not disparage or make negative statements (or induce or encourage other to disparage or make negative statements) about [Rogers Group] or any of [Rogers Group's agents] . . . including, without limitation, criticizing such Person's business strategy.

**RESPONSE: Defendants admit that Section 5 of the Noncompetition Agreement states that "[Reed] agrees that he will not disparage or make negative statements (or induce or encourage others to disparage or make negative statements) about [Rogers Group[ or any of their past or present officers, directors, agents, employees, attorneys, successors and assigns (as applicable), including, without limitation, criticizing such Person's business strategy." Any allegations inconsistent with or in addition to the foregoing are denied.**

40. As an additional part of the acquisition, Rogers Group and Reed entered into a Consulting Agreement, in which Reed agreed to provide Rogers Group with consultation services to smooth the transition of the assets and business operations from Reed Alabama to Rogers Group. Rogers Group and Reed executed the Consulting Agreement on March 8, 2021.

**RESPONSE: Defendants admit that Reed entered into a Consulting Agreement with Rogers Group on March 8, 2021. Defendants aver that Reed was not called or requested by Rogers Group at any time to consult on any project or strategy, or fulfill any obligations pursuant to the Consulting Agreement. Any allegations inconsistent with or in addition to the foregoing are denied.**

41. In order to fulfill his consulting duties and to further protect the integrity of Rogers Group's purchase of Reed Alabama's assets and business operations, the Consulting Agreement prohibits Reed from disclosing any of Rogers Group's confidential or proprietary information. The Consulting Agreement provides:

[Reed] agrees that he and his representatives shall keep secret and maintain in confidence and not use for his benefit or the benefit of others (except as otherwise required by law) and Confidential Information (as defined below) obtained from Rogers or related to [Reed Alabama's former] Business.

**RESPONSE: Defendants admit that Reed entered into the Consulting Agreement with Rogers Group, which contains the quoted language regarding the disclosure of Confidential Information, and that such language speaks for itself. Any allegations inconsistent with or in addition to the foregoing are denied.**

42.     The Consulting Agreement goes on to broadly define "Confidential Information" as any "confidential or proprietary information [including] any information concerning the business and affairs of either Rogers [Group] or [Reed Alabama's former] Business that is not generally available to the public."

**RESPONSE: The allegations of Paragraph 42 of the Complaint are admitted.**

43.     Rogers Group agreed to pay and did pay Reed $170,000 in exchange for his consulting services and obligation to maintain the confidentiality of Rogers Group's confidential or proprietary information.

**RESPONSE: Defendants admit that Reed received $170,000.00 in exchange for entering into the Consulting Agreement. However, Defendants aver that Reed was not called or requested by Rogers Group at any time to consult on any project or strategy, or fulfill any obligations pursuant to the Consulting Agreement. Any allegations inconsistent with or in addition to the foregoing are denied.**

44.     The Noncompetition Agreement, Consulting Agreement, and other contracts between Reed and Rogers Group involved in the asset sale were negotiated and agreed to in Nashville, contain Tennessee choice of law provisions, and prohibit certain competitive business activities in Tennessee and Alabama.

**RESPONSE: Defendants admit that the Noncompetition Agreement and Consulting Agreement between Reed and Rogers Group contain Tennessee choice of law provisions and prohibit certain competitive business activities in Tennessee and Alabama. Defendants deny that the agreements were negotiated and agreed to in Nashville. All allegations inconsistent with or in addition to the foregoing are denied.**

16

*Defendants' Breaches and Unlawful Competition*

45.     On July 22, 2021, shortly after the close of the asset sale transactions between Reed Contracting Services, Inc. and Rogers Group, Reed changed the name of Reed Contracting Services, Inc. to "Reed Alabama, Inc." in an effort to obscure the entity's unlawful competition with Rogers Group.

**RESPONSE: Defendants admit that after executing the APA, Reed Contracting was required to change its name (which it chose to do to Reed Alabama), as Rogers Group had purchased the company name pursuant to Section 1.1(xvii). Any allegations inconsistent with or in addition to the foregoing are denied.**

46.     Reed has since begun operating his business entities in a way that is both planning to compete and actively competing with Rogers Group in violation of his restrictive covenants. Rogers Group only became aware of this unlawful competition recently.

**RESPONSE: The allegations of Paragraph 46 of the Complaint are denied.**

47.     One of Defendants' recent projects that is unlawfully competitive with Rogers Group is the Abbey Brook subdivision. Abbey Brook is a residential subdivision development in Athens, Alabama that has been and continues to be constructed in multiple phases, including some areas currently under construction.

**RESPONSE: The allegations of Paragraph 47 of the Complaint are denied.**

48.     Dump trucks owned by Reed Maintenance and operated by Reed Maintenance employees are actively transporting gravel from a quarry in Belle Mina to the active Abbey Brook construction site. This gravel is to be used for road construction in the subdivision.

**RESPONSE: Defendants admit that trucks owned and operated by Reed Maintenance have transported gravel from a quarry in Belle Mina to the Abbey Brook construction site as lease hauling work that Reed Maintenance performed for Grayson Carter. Any allegations inconsistent with or in addition to the foregoing are denied.**

49.     The image below depicts two Reed dump trucks delivering gravel to an Abbey

Brook construction site on August 14, 2025:



**RESPONSE: Defendants admit that the photograph included in Paragraph 49 of the Complaint includes a truck owned by Defendants. Defendants are without sufficient information or knowledge as to the truth of the remainder of the allegations of Paragraph 49 of the Complaint, and therefore deny the same.**

50.     The red Reed dump truck bears a USDOT number of 1515882, more clearly shown in the photo below:



**RESPONSE: Defendants admit that the truck with USDOT number 1515882 is registered to Reed Maintenance. Any allegations inconsistent with or in addition to the foregoing are denied.**

51.     According to the U.S. Department of Transportation's public database, USDOT number 1515882 is registered to Reed Maintenance:



**RESPONSE: The allegations of Paragraph 51 of the Complaint are admitted.**

52.     According to the Department of Transportation, Reed Maintenance has registered these dump trucks to carry building materials, machinery, and construction materials.

**RESPONSE: Defendants admit that Reed Maintenance registered the dump trucks at issue to carry building materials, machinery, and construction materials prior to the execution of the APA. Any allegations inconsistent with or in addition to the foregoing are denied.**

53.     Abbey Brook is not the only construction project in which one of Reed's companies is actively engaged in violation of Reed's restrictive covenants. Reed trucks are also delivering gravel from the same Belle Mina quarry to two neighboring new home construction sites located at 160 and 180 Bishop Road in Huntsville, Alabama.

**RESPONSE: Defendants admit that Reed Maintenance has delivered crushed gravel to residential homebuilders at 160 and 180 Bishop Road, and it has purchased crushed rock from Rogers Group for deliveries to this neighborhood. Any allegations inconsistent with or in addition to the foregoing are denied.**

54.     The photo below depicts a Reed Maintenance dump truck with a USDOT number of 1515882 delivering gravel to this construction site on August 8, 2025 (a Reed Maintenance dumpster and Reed Maintenance portable toilet are also depicted at the site):



**RESPONSE: Defendants admit that the photograph included in Paragraph 49 of the Complaint includes a truck owned by Defendants. Defendants are without sufficient information or knowledge as to the truth of the remainder of the allegations of Paragraph 54 of the Complaint, and therefore deny the same.**

55.    As shown below and in another example of unlawful competition, on August 29, 2025, Reed Maintenance dump trucks began a route out of an asphalt plant in north Alabama:



**RESPONSE: Defendants admit that the photograph included in Paragraph 49 of the Complaint includes a truck owned by Defendants. Defendants are without sufficient information or knowledge as to the truth of the remainder of the allegations of Paragraph 55 of the Complaint, and therefore deny the same.**

56.     Later the same day, the Reed Maintenance trucks arrived at a construction site for

apparent use in a paving project for a new Marriott hotel.

**RESPONSE: Defendants admit that trucks owned and operated by Reed Maintenance have transported asphalt millings away from the Marriot Hotel at issue in Paragraph 56 of the Complaint as lease hauling work for Grayson Carter. Defendants are without sufficient information or knowledge as to the truth of the remainder of the allegations of Paragraph 56 of the Complaint, and therefore deny the same.**

57.     As depicted below, Reed Maintenance dump trucks directly participated in the

paving project at the hotel under construction:



**RESPONSE: Defendants admit that trucks owned and operated by Reed Maintenance have transported asphalt millings away from the Marriot Hotel at issue in Paragraph 57 of the Complaint as lease hauling work for Grayson Carter. Defendants are without sufficient information or knowledge as to the truth of the remainder of the allegations of Paragraph 57 of the Complaint, and therefore deny the same.**

58.     As recently as August of this year, Rogers Group submitted a bid to provide

demolition, site preparation, utilities, stone, asphalt paving, and other construction materials and

services for a new gymnasium at Brindlee Mountain High School in Guntersville, Alabama. Reed—through Reed Maintenance—also submitted a bid for the same work, directly competing with Rogers Group on the same project.

**RESPONSE: Defendants admit that Reed Maintenance, through Bryceton Flack and Nick Pettit, submitted a bid for the site package of the Brindlee Mountain High School gymnasium project in 2025 after receiving public notice that bids were being received, as it was a relatively small project and Mr. Flack and Mr. Pettit were unaware that Rogers Group was interested or intended to bid on the project. Reed had no knowledge of Reed Maintenance submitting a bid and Reed Maintenance's bid was not accepted. Any allegations inconsistent with or in addition to the foregoing are denied.**

59.     In July of this year, Reed Maintenance dump trucks also repeatedly provided nighttime hauling services for an Alabama Department of Transportation paving project in north Alabama. Reed Maintenance was paid a higher rate for these services because they occurred at night.

**RESPONSE:  Defendants admit that Reed Maintenance performed work for an Alabama Department of Transportation paving project in north Alabama as a lease hauler for Grayson Carter, and that it received the standard rate paid by Grayson Carter to lease haulers for this work. Any allegations inconsistent with or in addition to the foregoing are denied.**

60.     Just last month, both Rogers Group and Reed Maintenance planned to submit competing bids for a roadway paving project with the City of Arab, Alabama. At the bid opening, a representative of Reed Maintenance informed the Arab city official that Reed Maintenance was no longer submitting a bid. Instead of reading Reed Maintenance's bid, the official then read the bid of a competitor that never received a bid packet. Upon information and belief, this competitor had an agreement with Reed Maintenance to submit a bid in its place from which Reed Maintenance could benefit privately. This apparent agreement is the exact type of indirect competition the Noncompetition Agreement also prohibits.

**RESPONSE:  Defendants admit that Nick Pettit, an estimator for Reed Maintenance, saw the posting for the job for the City of Arab less than a week before bids were due and**

considered placing a bid for the work when he believed that at the time no one was bidding for the work. However, when Mr. Pettit learned that Rogers Group was planning on submitting a bid, he stopped any efforts to submit a bid on behalf of Reed Maintenance. The remaining allegations of Paragraph 60 of the Complaint are denied.

61. Later in September, an empty Reed Maintenance tri-axle dump truck drove from Lacey's Spring, Alabama to Gate 3 of Redstone Arsenal, a U.S. Army base near Huntsville. The truck arrived near 9:00 a.m. and was admitted entry to the base. Such entry requires completion of a security process for access to the base.

**RESPONSE: Defendants admit that Reed Maintenance performed work at the Redstone Arsenal in September 2025 as a lease hauler for Grayson Garter, and that entry to the Redstone Arsenal requires completion of a security process for access to the base. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 61, and therefore deny the same.**

62. Approximately one hour later, two other tri-axle dump trucks belonging to a Reed Group competitor entered Redstone Arsenal through the same gate as the Reed Maintenance truck.

**RESPONSE: Defendants admit that Reed Maintenance performed work at the Redstone Arsenal in September 2025 as a lease hauler for Grayson Carter. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 62, and therefore deny the same.**

63. Reed Alabama or Reed Maintenance employees and equipment have recently performed other business in competition with Rogers Group at residential construction sites associated with D.R. Horton, Inc., Smith Douglas Homes, and Guild Builders. Reed Alabama or Reed Maintenance employees and equipment, including truck nos. 447, 446, and 441, have also recently hauled asphalt and other paving and construction materials to a commercial construction site in Hartselle, Alabama.

**RESPONSE: Defendants admit that Reed Maintenance sold and hauled small amounts of crushed rock to residential construction sites for Guild Homes for several years, and that this rock was often purchased from Rogers Group. Defendants aver that any work performed for DR Horton or Smith Douglas was leasing hauling work that Reed Maintenance performed for Grayson Carter. Defendants admit that Reed Maintenance owns a truck registered with Nos. 446 and 447, but deny that they have a truck registered to No. 441. Defendants deny that**

**Reed Alabama employees or equipment performed any work set forth in Paragraph 63 of the Complaint, as Reed Alabama has no employees and does not own truck Nos. 446 and 447. Any allegations inconsistent with or in addition to the foregoing are denied.**

64.     Defendants' unlawful competition is not limited to customers or potential customers but also extends to Rogers Group's current employees. Defendants have recently solicited current Rogers Group employee truck drivers, in at least some instances using recruiters to disguise their prohibited solicitations. Rogers Group was forced to expend additional resources to maintain its workforce in response to Defendants' recruitment efforts.

**RESPONSE: Defendants are without sufficient information or knowledge as to the resources that Rogers Group was expended to maintain its workforce, and therefore deny the same. The remaining allegations of Paragraph 64 of the Complaint are denied.**

65.     As this evidence demonstrates, Reed—through Reed Alabama, Reed Maintenance, and potentially other entities—is currently actively competing with Rogers Group in violation of Reed's restrictive covenants.

**RESPONSE: The allegations of Paragraph 65 of the Complaint are denied.**

66.     In order to advance these competitive business interests, upon information and belief, Reed has also unlawfully used Rogers Group's own confidential information against it, undermining Rogers Group in competitively bid projects and other projects where Rogers Group and Defendants compete for the same business.

**RESPONSE: The allegations of Paragraph 66 of the Complaint are denied.**

67.     For example, Reed is using confidential information of Reed Alabama (all of which had been sold to Rogers Group) related to the production of aggregates and the pricing of products, services, and competitive bids to unlawfully compete with and take business away from Rogers Group.  Because Reed Alabama sold *all* of its confidential information, including any trade secrets, to Rogers Group, none of this confidential information may be used by any of the Defendants or

for the benefit of any individual or entity other than Rogers Group.

**RESPONSE: The allegations of Paragraph 67 of the Complaint are denied.**

68.     Defendants, directly or indirectly, have recently repeatedly bid against Rogers Group on competitive projects with prices that appear only marginally higher—or even below— Defendants' own break-even point. These bids, in conjunction with Defendants' other unlawfully competitive activity, appear targeted to temporarily reduce prices to steal Rogers Group's customers and potential customers, only to later raise prices significantly once Defendants have gained an advantage in the marketplace. Defendants appear to be using Rogers Group's confidential information to inform and execute this strategy and to ensure their bids are priced slightly below those that Rogers Group is able to submit.

**RESPONSE: The allegations of Paragraph 68 of the Complaint are denied.**

69.     Reed, directly or indirectly and in conjunction with Reed Alabama and Reed Maintenance, is also actively soliciting Rogers Group customers and suppliers to do business with Defendants rather than with Rogers Group. As a part of these solicitations, Rogers Group understands Reed to be disparaging or otherwise making negative statements about Rogers Group and its business to others. After all, Defendants' communication of any negative comparison of Rogers Group would necessarily include disparaging Rogers Group's products, services, abilities, or pricing.

**RESPONSE: The allegations of Paragraph 69 of the Complaint are denied.**

70.     Reed has also violated the confidentiality obligation of the Consulting Agreement by improperly using Rogers Group's confidential information that he learned in his capacity as a consultant. For example, following the closing on Rogers Group's purchase of Reed Alabama's assets, Reed's consulting duties included meeting with Rogers Group employees to discuss their

strategies for developing business from new customers and additional business from existing customers, Reed introducing Rogers Group to prospective customers and others active in Reed Alabama's business, and other strategies and implementation for growing Rogers Group's business in Alabama and Tennessee. Reed even reviewed and provided feedback to Rogers Group on a significant construction project for which Rogers Group was submitting a bid. This review gave Reed substantive insight into Rogers Group's confidential pricing and bidding techniques.

**RESPONSE: The allegations of Paragraph 70 of the Complaint are denied.**

71. Defendants' tortious and unlawful competition with Rogers Group has damaged Rogers Group by undermining its relationships with customers, suppliers, and employees and diverting hundreds of thousands of dollars of or more revenue away from Rogers Group and to Defendants. Rogers Group has suffered a portion of this harm in Tennessee and in this judicial district.

**RESPONSE: The allegations of Paragraph 71 of the Complaint are denied.**

## COUNT I
## BREACH OF ASSET PURCHASE AGREEMENT
## - BREACH OF NON-DISCLOSURE OBLIGATIONS

72. Rogers Group incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

**RESPONSE: In response to Paragraph 72, Defendants restate and incorporate the foregoing paragraphs above as if fully set forth herein.**

73. Rogers Group and Defendants entered into a contract, namely the Asset Purchase Agreement.

**RESPONSE: The allegations of Paragraph 73 of the Complaint are admitted.**

74. Rogers Group performed all of the things the Asset Purchase Agreement required it to do.

26

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 74 of the Complaint, and therefore deny the same.**

75. Defendants, however, did not do all of the things required of them in the Asset Purchase Agreement, because they failed to comply with the requirements of the non-disclosure obligations in the Asset Purchase Agreement. Defendants breached and continue to breach their contractual obligations by disclosing to others and using for their own benefit confidential information belonging to Rogers Group in addition to confidential information that had previously belonged to Reed Alabama and was sold to Rogers Group. Defendants' use of Rogers Group's confidential information is apparent from the form and pricing of its unlawful competition.

**RESPONSE: The allegations of Paragraph 75 of the Complaint are denied.**

76. Rogers Group was harmed by Defendants' breaches of their contractual non-disclosure obligations, and this harm is continuing.

**RESPONSE: The allegations of Paragraph 76 of the Complaint are denied.**

**COUNT II**
**BREACH OF ASSET PURCHASE AGREEMENT**
**– BREACH OF NON-COMPETITION OBLIGATIONS**

77. Rogers Group incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

**RESPONSE: In response to Paragraph 77, Defendants restate and incorporate the foregoing paragraphs above as if fully set forth herein.**

78. Rogers Group and Defendants entered into a contract, namely the Asset Purchase Agreement.

**RESPONSE: The allegations of Paragraph 78 of the Complaint are admitted.**

79. Rogers Group performed all of the things the Asset Purchase Agreement required it to do.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 79 of the Complaint, and therefore deny the same.**

80.    Defendants, however, did not do all of the things required of them in the Asset Purchase Agreement, because they failed to comply with the requirements of the non-competition obligations in the Asset Purchase Agreement. Defendants breached their contractual obligations by owning and operating at least two businesses in Tennessee and Alabama in direct competition with Rogers Group and the Reed Alabama business operations Defendants sold to Rogers Group.

**RESPONSE: The allegations of Paragraph 80 of the Complaint are denied.**

81.    Rogers Group was harmed by Defendants' breaches of their contractual non-competition obligations, and this harm is continuing.

**RESPONSE: The allegations of Paragraph 81 of the Complaint are denied.**

## COUNT III
## BREACH OF ASSET PURCHASE AGREEMENT
## – BREACH OF NON-SOLICITATION OBLIGATIONS

82.    Rogers Group incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

**RESPONSE: In response to Paragraph 82, Defendants restate and incorporate the foregoing paragraphs above as if fully set forth herein.**

83.    Rogers Group and Defendants entered into a contract, namely the Asset Purchase Agreement.

**RESPONSE: The allegations of Paragraph 83 of the Complaint are admitted.**

84.    Rogers Group performed all of the things the Asset Purchase Agreement required it to do.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 84 of the Complaint, and therefore deny the same.**

85.    Defendants, however, did not do all of the things required of them in the Asset

Purchase Agreement, because they failed to comply with the requirements of the non-solicitation obligations in the Asset Purchase Agreement. Defendants breached their contractual obligations by encouraging, inducing, or seeking to encourage or induce a customer, supplier, employee, or any other person having a business relationship with Rogers Group in Alabama and Tennessee to cease or adversely change that business relationship.

**RESPONSE: The allegations of Paragraph 85 of the Complaint are denied.**

86. Rogers Group was harmed by Defendants' breaches of their contractual non-solicitation obligations, and this harm is continuing.

**RESPONSE: The allegations of Paragraph 86 of the Complaint are denied.**

### COUNT IV
### BREACH OF ASSET PURCHASE AGREEMENT
### – BREACH OF NON-DISPARAGEMENT OBLIGATIONS

87. Rogers Group incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

**RESPONSE: In response to Paragraph 87, Defendants restate and incorporate the foregoing paragraphs above as if fully set forth herein.**

88. Rogers Group and Defendants entered into a contract, namely the Asset Purchase Agreement.

**RESPONSE: The allegations of Paragraph 88 of the Complaint are admitted.**

89. Rogers Group performed all of the things the Asset Purchase Agreement required it to do.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 89 of the Complaint, and therefore deny the same.**

90. Defendants failed to do something the Asset Purchase Agreement required them to do by failing to comply with the requirements of the non-disparagement obligations in the Asset

Purchase Agreement. Defendants breached their contractual obligations by disparaging or making negative statements about Rogers Group (or inducing or encouraging others to do so) in the course of competing with Rogers Group for business in Alabama and Tennessee. Defendants' disparagement of Rogers Group's products, services, abilities, or pricing is apparent from Defendants' solicitation of existing and prospective customers.

**RESPONSE: The allegations of Paragraph 90 of the Complaint are denied.**

91.     Rogers Group was harmed by Defendants' breaches of their contractual non-disparagement obligations, and this harm is continuing.

**RESPONSE: The allegations of Paragraph 91 of the Complaint are denied.**

## COUNT V
## BREACH OF SELLER'S NONCOMPETITION AGREEMENT
## – BREACH OF CONFIDENTIALITY OBLIGATIONS

92.     Rogers Group incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

**RESPONSE: In response to Paragraph 92, Defendants restate and incorporate the foregoing paragraphs above as if fully set forth herein.**

93.     Rogers Group and Reed entered into a contract, namely the Seller's Noncompetition Agreement.

**RESPONSE: The allegations of Paragraph 93 of the Complaint are admitted.**

94.     Rogers Group performed all of the things the Seller's Noncompetition Agreement required it to do.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 94 of the Complaint, and therefore deny the same.**

95.     Reed, however, did not do all of the things required of him in the Noncompetition Agreement, because he failed to comply with the requirements of the

confidentiality obligations in the Noncompetition Agreement. Reed breached and continues to breach his contractual obligations by disclosing to others and using for his own benefit the confidential information that had previously belonged to Reed Alabama and was sold to Rogers Group. Reed's use of Rogers Group's confidential information is apparent from the form and pricing of Defendants' unlawful competition at Reed's direction.

**RESPONSE: The allegations of Paragraph 95 of the Complaint are denied.**

96.     Rogers Group was harmed by Reed's breaches of his contractual confidentiality obligations, and this harm is continuing.

**RESPONSE: The allegations of Paragraph 96 of the Complaint are denied.**

**COUNT VI**
**BREACH OF SELLER'S NONCOMPETITION AGREEMENT**
**<u>– BREACH OF NONCOMPETITION OBLIGATIONS</u>**

97.     Rogers Group incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

**RESPONSE: In response to Paragraph 97, Defendants restate and incorporate the foregoing paragraphs above as if fully set forth herein.**

98.     Rogers Group and Reed entered into a contract, namely the Seller's Noncompetition Agreement.

**RESPONSE: The allegations of Paragraph 98 of the Complaint are admitted.**

99.     Rogers Group performed all of the things the Seller's Noncompetition Agreement required it to do.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 99 of the Complaint, and therefore deny the same.**

100.     Reed, however, did not do all the things required of him in the Noncompetition Agreement, because he failed to comply with the requirements of the noncompetition obligations

in the Noncompetition Agreement. Reed breached his contractual obligations by owning and operating at least two businesses in Tennessee and Alabama in direct competition with Rogers Group and the Reed Alabama business operations he sold to Rogers Group.

**RESPONSE: The allegations of Paragraph 100 of the Complaint are denied.**

101. Rogers Group was harmed by Reed's breaches of his contractual noncompetition obligations, and this harm is continuing.

**RESPONSE: The allegations of Paragraph 101 of the Complaint are denied.**

**COUNT VII**
**BREACH OF SELLER'S NONCOMPETITION AGREEMENT**
**– BREACH OF NONSOLICITATION OBLIGATIONS**

102. Rogers Group incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

**RESPONSE: In response to Paragraph 102, Defendants restate and incorporate the foregoing paragraphs above as if fully set forth herein.**

103. Rogers Group and Reed entered into a contract, namely the Seller's Noncompetition Agreement.

**RESPONSE: The allegations of Paragraph 103 of the Complaint are admitted.**

104. Rogers Group performed all of the things the Seller's Noncompetition Agreement required it to do.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 104 of the Complaint, and therefore deny the same.**

105. Reed, however, did not do all of the things required of him in the Noncompetition Agreement, because he failed to comply with the requirements of the nonsolicitation obligations in the Noncompetition Agreement. Reed breached his contractual obligations by encouraging, inducing, or seeking to encourage or induce a customer, supplier, employee, or any other person

having a business relationship with Rogers Group in Alabama and Tennessee to cease or adversely change that business relationship.

**RESPONSE: The allegations of Paragraph 105 of the Complaint are denied.**

106.     Rogers Group was harmed by Reed's breaches of his contractual nonsolicitation obligations, and this harm is continuing.

**RESPONSE: The allegations of Paragraph 106 of the Complaint are denied.**

**COUNT VIII**
**BREACH OF SELLER'S NONCOMPETITION AGREEMENT**
**– BREACH OF NONDISPARAGEMENT OBLIGATIONS**

107.     Rogers Group incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

**RESPONSE: In response to Paragraph 107, Defendants restate and incorporate the foregoing paragraphs above as if fully set forth herein.**

108.     Rogers Group and Reed entered into a contract, namely the Seller's Noncompetition Agreement.

**RESPONSE: The allegations of Paragraph 108 of the Complaint are admitted.**

109.     Rogers Group performed all of the things the Seller's Noncompetition Agreement required it to do.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 109 of the Complaint, and therefore deny the same.**

110.     Reed failed to do something the Noncompetition Agreement required him to do by failing to comply with the requirements of the nondisparagement obligations in the Noncompetition Agreement. Reed breached his contractual obligations by disparaging or making negative statements about Rogers Group (or inducing or encouraging others to do so) in the course of competing with Rogers Group for business in Alabama and Tennessee. Reed's disparagement

of Rogers Group's products, services, abilities, or pricing is apparent from Defendants' solicitation of existing and prospective customers at Reed's direction.

**RESPONSE: The allegations of Paragraph 110 of the Complaint are denied.**

111.     Rogers Group was harmed by Reed's breaches of his contractual nondisparagement obligations, and this harm is continuing.

**RESPONSE: The allegations of Paragraph 11 of the Complaint are denied.**

**COUNT IX**
**BREACH OF CONSULTING AGREEMENT**
**– BREACH OF CONFIDENTIALITY OBLIGATIONS**

112.     Rogers Group incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

**RESPONSE: In response to Paragraph 112, Defendants restate and incorporate the foregoing paragraphs above as if fully set forth herein.**

113.     Rogers Group and Reed entered into a contract, namely the Consulting Agreement.

**RESPONSE: The allegations of Paragraph 113 of the Complaint are admitted.**

114.     Rogers Group performed all of the things the Consulting Agreement required it to do.

**RESPONSE:  Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 114 of the Complaint, and therefore deny the same.**

115.     Reed failed to do something the Consulting Agreement required him to do by failing to comply with the requirements of the confidentiality obligations in the Consulting Agreement. Reed breached and continues to breach his contractual obligations by disclosing Rogers Group's confidential information to others and using it for his own benefit.  Reed's use of Rogers Group's confidential information is apparent from the form and pricing of Defendants' unlawful competition at Reed's direction.

**RESPONSE: The allegations of Paragraph 115 of the Complaint are denied.**

116.     Rogers Group was harmed by Reed's breaches of his contractual confidentiality obligations, and this harm is continuing.

**RESPONSE: The allegations of Paragraph 116 of the Complaint are denied.**

**COUNT X**
**INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS**

117.     Rogers Group incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

**RESPONSE: In response to Paragraph 117, Defendants restate and incorporate the foregoing paragraphs above as if fully set forth herein.**

118.     Rogers Group had business relationships with its customers, suppliers, and employees in Alabama and Tennessee following the acquisition of Reed Alabama's assets and business operations.

**RESPONSE: Defendants are without sufficient information or knowledge as to the truth of the of the allegations of Paragraph 118 of the Complaint, and therefore deny the same.**

119.     Defendants knew about Rogers Group's business relationships.

**RESPONSE: Defendants are without sufficient information or knowledge as to the truth of the of the allegations of Paragraph 119 of the Complaint, and therefore deny the same.**

120.     Defendants were not parties to these business relationships, were not agents of or related to anyone in these relationships, and had no financial stake in these business relationships.

**RESPONSE: Defendants are without sufficient information or knowledge as to the truth of the of the allegations of Paragraph 120 of the Complaint, and therefore deny the same.**

121.     Defendants intentionally disrupted or interfered with these business relationships by unlawfully competing with Rogers Group.

**RESPONSE: The allegations of Paragraph 121 of the Complaint are denied.**

122.     Rogers Group was harmed by Defendants' intentional interference, and this harm is continuing.

**RESPONSE: The allegations of Paragraph 122 of the Complaint are denied.**

## COUNT XI
## <u>INJUNCTIVE RELIEF</u>

123.     Rogers Group incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

**RESPONSE: In response to Paragraph 123, Defendants restate and incorporate the foregoing paragraphs above as if fully set forth herein.**

124.     Reed has violated and continues to violate the enforceable restrictive covenant provisions of the Seller's Noncompetition Agreement and the confidentiality obligations of the Consulting Agreement as described in this Complaint.

**RESPONSE: The allegations of Paragraph 124 of the Complaint are denied.**

125.     Reed Alabama and Reed Maintenance have aided and abetted Reed in his violations of his restrictive covenants and confidentiality obligations.

**RESPONSE: The allegations of Paragraph 125 of the Complaint are denied.**

126.     Rogers Group has and will continue to suffer immediate and irreparable injury due to Defendants' conduct if Defendants are not enjoined from violating Reed's obligations under the Noncompetition Agreement and the Consulting Agreement.  This irreparable injury includes, but is not limited to, Rogers Group's inability to protect its goodwill, preserve the confidentiality of its confidential and proprietary business information, and maintain its customer, supplier, and other business relationships.

**RESPONSE: The allegations of Paragraph 126 of the Complaint are denied.**

127.     Rogers Group has no adequate legal remedy for Defendants' breaches of these obligations.  Reed expressly agreed in the Noncompetition Agreement that Rogers Group has no adequate legal remedy and that injunctive relief is appropriate to remedy any breach or threatened breach or to enforce the terms of the Noncompetition Agreement.

**RESPONSE: The allegations of Paragraph 127 of the Complaint are denied.**

128.     The injury to Rogers Group outweighs the harm the injunction would cause Defendants because enforcement of these contractual and statutory obligations would not preclude Reed from employment or other business pursuits permitted under the Noncompetition Agreement that is not unlawfully competitive with Rogers Group.  Rather, it would merely prevent Defendants from doing something they already agreed not to do and for which they were handsomely compensated.

**RESPONSE: The allegations of Paragraph 128 of the Complaint are denied.**

129.     Granting Rogers Group injunctive relief will serve the public interest by defending protectable business interests and information consistent with Tennessee and Alabama laws.

**RESPONSE: The allegations of Paragraph 129 of the Complaint are denied.**

## <u>RELIEF REQUESTED</u>

Defendants deny that Plaintiff is entitled to any relief that it seeks in its prayer for relief contained in the Complaint. Defendants further deny that Plaintiff is entitled to injunctive relief or recover any damages or attorney's fees on any of the claims asserted in the Complaint, or that it is entitled to any other relief that it seeks. All allegations not heretofore admitted or denied are here and now denied fully as if in detail.

## AFFIRMATIVE AND OTHER DEFENSES

Now having fully answered, Defendants hereby plead their affirmative and other defenses in this action:

### FIRST DEFENSE

The Complaint fails, in whole or in part, to state a claim against Defendants upon which relief can be granted.

### SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, because its damages, if any, were caused by its own conduct, acts or omissions.

### THIRD DEFENSE

The Complaint must be dismissed as to each claim made or sought to be made that is barred by the applicable statute of limitations.

### FOURTH DEFENSE

Plaintiff's claims are barred in whole or in part, by the doctrine of laches.

### FIFTH DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrines of promissory estoppel, equitable estoppel, and/or judicial estoppel.

### SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

### SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate its damages.

## EIGHTH DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff has released and/or waived such claims.

## NINTH DEFENSE

Plaintiff's claim for punitive damages, attorneys' fees, and costs is barred, in whole or in part, since such elements of damages are not available for some or all of the claims asserted by Plaintiff and/or because Defendants did not engage in any conduct rising to the level required to sustain such awards, and/or because an award of punitive damages would violate due process.

Defendants reserve the right to assert additional defenses as Plaintiff's claims are clarified during the course of this litigation.

WHEREFORE, Defendants respectfully request the following relief:

1)      That Plaintiff be afforded no relief that it seeks;

2)      That Plaintiff's complaint be dismissed with prejudice;

3)      That Defendants be awarded their reasonable attorneys' fees and expenses, and

4)      That Defendants be awarded such other relief as to which it may be justly entitled in this case.

Dated this 16th day of December, 2025.

Respectfully submitted,

*/s/ Robert W. Horton*
Robert W. Horton (TN BPR# 017417)
James T. Snodgrass (TN BPR# 036212)
Hunter K. Yoches (TN BPR# 036267)
Bass, Berry & Sims PLC
21 Platform Way South, Suite 3500
Nashville, TN 37203
Telephone: (615) 742-6200
bhorton@bassberry.com
jimmy.snodgrass@bassberry.com
hunter.yoches@bassberry.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of December 2025, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to:

Cason M. Kirby*
HOLLAND & KNIGHT LLP
1901 Sixth Avenue North, Suite 1400
Birmingham, Alabama 35203
cason.kirby@hklaw.com
*Pro Hac Vice*

Paul S. Davidson
HOLLAND & KNIGHT LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
paul.davidson@hklaw.com

*Counsel for Plaintiff*

*/s/ Robert W. Horton*

49010181.4